Good morning, your honors. Frank Weiser on behalf of the appellants. This case involves an adoption by the City of Oakland of two zoning ordinances, 12136 and 12137. The main contention under the takings clause is a facial takings claim, especially towards 12137, and in particular that 12137 does not substantially advance a legitimate governmental interest, and in particular that is because the City of Oakland's own zoning ordinances and state law created entitlement for legal nonconforming use statuses, and the 12137 specifically extinguishes that status, automatically extinguishes that status, and to the effect that the city is not following their own ordinances, they are in effect the face or the general dominant scope and features of the ordinance itself constitutes a facial taking. Just to make clear then, your facial takings claim only has to do with the legitimate state interest, not the economic viability. That's correct, your honor. All right. And then my question then on the facial takings claim is that you suggest that because it automatically becomes this nonconforming use, that this inevitably would raise a factual issue, is that right? I'm having some trouble understanding that because it would seem if that were true, we would never be able to determine these as a matter of law. Well, there were two components to the facial takings claim. I should be a little more clear on that. One component was the issue of the nonconforming use status, and to that effect I think your honor is correct that there you look just to the face of the ordinance itself and to the legal nonconforming use ordinances that the City of Oakland itself has adopted at, I believe, 17.114.110, that legal nonconforming use statuses can in fact remain in effect even if there are subsequent zoning amendments. So to that effect, I think a court could make a determination as a matter of law based on the fact that the complaint itself attached all those ordinances. We went one step further in our facial takings claim. We also indicated that some of the preamble, which were the factual findings by the city council in adopting the ordinances, both 12136 and 12137, that our claim is that there are certain factual issues that have to be determined as whether in fact there's any evidence to determine that those factual findings by the city council are in fact corrupt or true. Certainly nobody would contend that there's not a legitimate state interest for the city to regulate in general for nuisance activity, as they claim they do. The question whether there's any evidence that's found on the face of the ordinance exists, I think, does require some kind of a factual assessment that goes beyond a 12B6 motion. I would like to point out that the city has raised the issue of buckles, and I'm cognizant of buckles holding, but buckles, as I understand it, was concerned with the scope of Del Monte Dunes with respect to a jury trial and whether in fact Del Monte Dunes somehow swallowed up the rule under Rule 56 in summary judgment rules with respect to that issue. And as I recall, or as I understand buckles, buckles made a distinction that in that case it was a spot zoning case, whereas in Del Monte Dunes they were talking about inconsistency or the city not following its own ordinances. And to that effect it would seem to me that we have a case more analogous to a Del Monte Dunes type situation where 17.114.110, which is the entitlement, we're claiming the city is not following their own ordinances and adopting subsequently 12137. So that would, it would appear that this was not right for adjudication, or at least if the court did adjudicate as a matter of law, the record that was presented to the court would have allowed that this would not have been dismissed, the facial case claim under a 12B6 motion. Turning to the procedural due process argument, it's not our contention that legislative enactments in general would require that the city have to provide specific notice. But in this case, 12137 specifically singles out a subclass within the hotel-motel industry, unlike 12136. And to that effect, those people who are affected by an automatic extinguishment of their state entitlements are entitled to notice. And under the Matthews v. Eldridge test, it would seem that notice would be very easy for the city to give, would be a very slight administrative burden. And in fact, as alleged, it was not given, at least as to some of the motel owners. What's your best authority for your, is Matthews v. Eldridge your best case authority for the proposition that your clients were entitled to individualized notice? The case that we had at Harris versus County of Riverside, which is a zoning case, and which did talk about the fact that when a zoning change is made, something that would affect an entitlement, and it affects a very small subclass within the class of legislation, that they are, in fact, entitled to notice. So Matthews v. Eldridge and the Harris v. County of Riverside would seem to indicate that the city should have given notice as to all the motel owners who were affected by the adoption of 12137. So I guess the issue is whether or not this ordinance was one of general application or whether or not it targeted a relatively discrete number of businesses. I agree, Your Honor. I think 12136 was of general application, and that affected all the hotels and motels within the city of Oakland. But 12137 goes one step further. Because it's a subgroup of hotels, so you think it's too targeted to be of general applicability. That's correct, Your Honor. And it specifically deals with a statutory entitlement. Then turning to the equal protection claim. Counsel, before we leave that, though, in the Harris case, we focused on the fact that Harris and maybe one or two other adjacent landowners were affected, and that's a lot fewer in number. So where do we draw the line in terms of determining whether the group is small enough so that the individualized notice requirement is triggered? Because we're somewhere between Harris and the general applicability. So where do we draw that line? I think I'm cognizant of that, Your Honor, and I agree that it's a difficult issue to decide. But it would seem that in this particular case, if we were just talking, once again, about general zoning legislation, then, in fact, I would agree that Harris would be limited on its facts where, in effect, what this legislation is doing is particularizing towards one landowner. Right. But in this case, it would appear that what we are talking about goes one step further. It's not just general zoning legislation, but legislation that deals with specific entitlements. How many hotels were affected? I believe somewhere around five to ten, Your Honor. Then turning to the equal protection claim, the only thing that is being brought up here is only under a rational basis review test. And, of course, generally speaking, that would be a very, very difficult test to meet. What we are containing here, though, is what we have is one looks at the face of 12136 or 12137, and one has the exact same factual findings by the city council as to the basis for enacting the legislation. It would seem that it's arbitrary and irrational why, in fact, illegal non-conforming use statuses are somehow singled out now and determined to be deemed approved activities. And then finally, as to the First Amendment claim, I'm aware of the fact this SlurNo test and the fact that this circuit has, in fact, made it almost an impossible challenge. First Amendment claims, unless there's all possible applications. Right. That was, I guess, going to be my question. I don't know quite what we can do with that. Well, it's a difficult question. One looks at the city of Chicago versus Morales. It certainly seems that Justice Stevens was concerned with that and seemed to reject Justice Scalia's contention of the all possible applicants, especially in a situation where there's no mens rea requirement. I think that, in general, the case authority in this circuit has not dealt with a situation where you have an ordinance that attaches criminal penalties with no mens rea requirement, no scienta requirement. And I think when you do not have a scienta requirement and you attach criminal penalties, it sort of permeates throughout the whole of the ordinance, making it uncertain in any possible application whether, in fact, it is going to be arbitrarily enforced or not. And to that effect, I would indicate, it seems to me, that one could argue that it is in all possible circumstances uncertain how, in fact, the ordinance could be enforced without a scienta requirement. So it would really be because of the narrow circumstance of the criminal aspect of the city. Right. It's the criminal aspect of the ordinance rather than the specific terms of just loitering and lewd conduct and the district court was concentrating on those terms rather than the criminal aspect. If there are any other questions, thank you.  Thank you. Good morning. May it please the Court. Chris Key, appearing for defendant in Napoli City of Oakland. Based on the appellant's representations this morning, I think I can narrow the scope of my argument. It's my understanding now that the economically viable use portion is not on the table, which takes us then to the governmental interest prong. Plaintiffs have said consistently that the enactment of the ordinance extinguished an entitlement. The ordinances did no such thing. As of 1201 on September 10, 1999, when the ordinances went into effect, every hotel, motel, and rooming house in the city of Oakland that had previously been in nonconforming use, even though it was now designated as a deemed approved use, was still in use as a hotel, a motel, or a rooming house. There was nothing that affected the ability of the property owners to operate their businesses in the manner that had previously been nonconforming. All the ordinances did was impose a more particular specific regimen of requirements with respect to housekeeping, which are in the nature of nuisance abatement activities. Counsel, along that line, what's your response to opposing counsel's position that the predicate facts upon which this ordinance was based imply questions of fact rendering this case not subject to summary judgment adjudication? I think that the statements of purpose and the basis for the ordinances are spelled out with sufficient specificity on the face of the ordinances themselves and on the face of the complaint. Portions of the ordinances were attached as exhibits to the complaint, so it was entirely within the district court's purview and scope of review to take a look at those portions. Counsel, let me ask you specifically. For instance, in one of the whereas clauses, is that part of what was given to the city council for evidence to support the enactment of the ordinance? Was information given regarding the pattern of multiple and continuous arrests at the businesses and prostitution and narcotics use? Was that information provided to the city council in support of the ordinance? Do you mean the information itself, the supports, the, for instance, independent reports from the various administrative agencies supporting those? I think that's what opposing counsel is saying, that the purposes of the ordinance are set forth as these to eradicate the nuisance activity. But his point is that they should have the right to challenge whether or not there is prostitution and narcotics transactions. And so I'm trying to get from you, what's your response to that? Do they have a right to challenge the predicate facts that led to the enactment of this ordinance and the summary judgment motion? Your Honor, I don't believe that there is any authority for that proposition, that a plaintiff as a matter of law has the ability or, to put it differently, that a district court cannot rule on the constitutionality of an ordinance on its face unless there are the specific background facts provided. That would allow, that would force the court to look into, in great detail, into the legislative purposes, the mindsets of the legislators. And I'm not aware of any authority that requires that. Well, I think it would. I heard him say something slightly different, and that is if you're going to rely on the city's interest, as stated, and then we have to determine if that's a sufficient interest that meets it, he's saying, isn't that really raised a factual question, particularly because the predicate the city is using is the whereases, and that he thinks this is more like the somewhat ambiguous language in Del Monte Dunes that the Supreme Court left us with. So maybe in this case there needs to be, you can't really do even a summary judgment on this sort of thing, you need a trial. That's what I thought he was saying. That may well be what he's saying, and let me respond to that. I do believe that the Buckles decision at least sets the threshold level by allowing a court, by holding that a court may indeed, rather than a jury, may look at the question of whether or not a city or municipality, public entity has sufficiently stated a substantial governmental interest. Right. I think that Buckles does say that. So that being the threshold, it seems that I believe what plaintiff is suggesting, that it is irreducibly and inevitably a question of fact, and I don't believe that to be the case. And I would suggest that this Court's decision in Garneau, and more particularly the Supreme Court case in Agins, that case came up to the U.S. Supreme Court on a demurrer from the state courts, which was approved by the California State Supreme Court. Which case are you talking about? Agins, I'm sorry if I'm mispronouncing it, versus the city of Tiburon. Oh, right, Tiburon, all right. Yeah. That was a demurrer case. And there is a substantial discussion in that case about the facts that the California State Supreme Court looked at. And what the California Supreme Court did, and the Supreme Court approved this, was to look at the face of the ordinance and to look at the interests that were claimed to be advanced by that and say we think there's a sufficient fit here. And on the basis of that, they upheld the constitutionality of the ordinances. Counsel, that case was a little different in that it didn't involve the kind of nuisance articulations that are involved in this case. It kind of was to preserve open air spaces, which is more of a. . . Well, I would respond to that, Your Honor, that traditionally the scope of the city's authority with respect to exercises of police power and nuisance abatement programs in particular is considerably broader than it would be in the circumstances that were in Agins and have been traditionally afforded greater deference. I have seen ordinance enactments that have come before me when I was on the district court where the municipality did exactly what I've questioned you about, where when they went to enact the ordinance, they put into the record the number of police calls and the number of arrests as a predicate for the nuisance finding that they were asking the legislature to abate. Your Honor, if I may, on page 53 of the excerpts of record is ordinance number 12137, and among the statements of purpose in there, it says, for instance, whereas the city attorney has filed 10 or more civil abatement actions against operators of these businesses over the past seven years in an attempt to enjoin the illegal activities at the problem properties, whereas individual actions for injunctive relief and or closure are not effective substitutes for proper ongoing and regular maintenance. There's further reference to police surveillance overtaken over the past five years. There's specific reference to a concentration of illegal activity. I understand. That's why I asked the question about the whereas clauses, and I thought opposing counsel's position was they should have an opportunity to challenge whether or not these factual predicates were, I mean, this is a question of fact, whether or not these predicates were in fact in existence or are present to the extent that it's articulated in the whereas clauses. That's what I thought his position was, and that's why I asked you the question that I did. I see. Well, then I guess I would return to my earlier response, which is that I'm unaware of any authority that precludes a court, on the basis of this level of detailed factual assertions that appear on the face of the ordinance, that they cannot then look at the details of the ordinance itself, the regulations that are promulgated under the authority of the ordinance itself, and then make a conclusion as a matter of law that, yes, indeed, this is a substantial government interest. It relates, it sufficiently relates to the ordinances, the regulations themselves sufficiently relate to the stated purposes that, as a matter of law, we don't think that this constitutes a taking under the governmental interest portion. Let me, you know, this is one of these things where it kind of says you are what you are, but now you're not in terms of the way this ordinance reads. So what's the effect of a nonconforming use status of the hotels in light of these ordinances? There is none. All that it does is it brings it into the ordinances, in essence, and streamline the nuisance abatement authority of the city of Oakland to attack the nuisances that were documented in these statements of purposes. The only way in which a hotel, motel, or a rooming house can lose its deemed approved status, which is really nothing more than a renaming of the nonconforming use status, is to go through a series of detailed procedures, which are sent out in Sections 17.157.110 through 160 of the Oakland Planning Code. Those appear at the excerpts of record at 58 through 60. Those procedures allow for an extraordinary measure of process, notice, opportunity to be heard, consecutive hearings, appeals, interior administrative appeals, right of appeal to a court, and it's only after all those have been exhausted that a hotel or motel that is found to be in violation of these various regulations to a sufficient degree can then lose its deemed approved status, which is, in essence, its nonconforming use status. So merely by designating the property as deemed approved as contrasted to a nonconforming use does nothing with respect to the uses that the property can actually be put for. It still is a hotel. It still is a motel. It's just being called that to enable the city to place it within that administrative structure. And the reasons for that are among the justifications that I read earlier in response to Judge Rawlinson's question that the city had found itself, and this appears on the face of the ordinance, filing serial civil nuisance abatement actions against these properties, and they arrived at this administrative regulatory structure that allowed them to put it all basically under one unit. And so that's the purpose and the effects of the ordinances. But one argument that Mr. Weiser made that I think is somewhat intriguing is this due process argument on the second ordinance in terms of whether it really is particularized or generalized. And if it basically says, you know, hotels and motels that are previously recognized as a nonconforming use, that's what it's targeted to, that subset, why isn't that a fairly discrete identifiable group that's different than saying, I'm passing an ordinance for the city of Oakland? Well, I think it is a sufficiently large group that it would fall under the Harris and the bimetallic analysis, that this is not an individualized attack that would require some sort of individualized notice. Why so many hotels and hotels? Well, I don't know the answer to that. There are, I would note, however, that there are, I know that Mr. Weiser indicated that there were five to ten. Right. There are 50 plaintiffs. So each of them are claiming that their rights under this have been violated. So it's difficult to say. Well, so I guess that's a question. We don't know how the plaintiffs match up with the entities necessarily. But is that something that we would have to know? In other words, how could we, maybe we would rule in your favor, maybe we would rule in his favor, but how could we do that if we didn't know if it would, what if it was two, for example? But we don't know that because the record, we're kind of at the early stage here. How would we figure this out? I think the response would be, Your Honor, that the ordinance that is affecting these properties is in the nature of a zoning ordinance. It's a general ordinance. It applies uniformly to every, throughout the city of Oakland. It's not a spot zoning, which I know that the courts have had, I think even in Buckles that was an issue. Of course, spot zoning is about as targeted as you can get. But my understanding is that. Something between spot zoning and, you know, big zoning. I think the response would be to look at the standard in the bimetallic case. And regrettably, I don't have the facts of bimetallic on the tip of my tongue. That's fine. We can go back and look at it. But my recollection is that that probably falls between Harris and a global, a broader universe of potential plaintiffs. My recollection is that that was between five and ten, something along those lines, which I would suggest would probably be helpful in resolving that question. I would only respond, I guess that I think that that was the due process argument that was raised. I think that we've covered that. The only other point that I would like to make deals with the equal protection argument. The Salerno test, which requires that a plaintiff prove that the ordinance is void in all its applications, is still good law in the Ninth Circuit. The Kim versus Ziegler case is a comparatively recent decision of this court, which says that only in the context of abortion questions and perhaps the First Amendment does the Morales case or some sort of broader or some sort of different level of analysis apply to a facial challenge to an ordinance. Ziegler had to do with the detention of an individual in the immigration context. So it's clearly a criminal statute at work. And in that setting, the court said that the Salerno test would still apply. And I would just close by saying that the language that the plaintiffs object to in this, once we get to the actual, get past what's the legal standard to the substance of the argument itself, has to do with the word proximity. Close proximity. Yeah. And the idea that a person of ordinary intelligence would not understand what close proximity means, that I believe those exact words were used in the city of Rockford case and the court in the flip side case. Both of those are cited in our brief. Both of those discuss that exact term, close proximity. Unless the court has further questions, I'm happy to submit. Thank you. Thank you. Thank you. With respect to the facial takings claim in the whereas clauses that Judge Rawlinson raised, I think there is some precedent that would go to the underlying factual assessment. So once again, we're talking only about the findings made by the city council on the face of the ordinance. And the opponents have cited the Nolan versus California Coastal Commission case, which specifically distinguishes equal protection challenges from takings challenges under substantially advancing a legitimate governmental interest test. And it specifically says that you don't just look at it as any conceivable basis or any basis as you would in an equal protection challenge, but there has to be a fit. There has to be some kind of a factual fit between the goal and the means towards achieving the goal. Now, admittedly ---- Is it your position then that the Nolan case supports your argument that there is a genuine issue of material fact regarding that fit? Yes. Well, this, as Your Honor knows, came up in a 12B6 context and was not even in a Rule 56 challenge. So we haven't even gotten to the stage of the evidence. But certainly Nolan would support the position at a 12B6 level here that, in fact, there has to be some kind of factual inquiry by the court to determine, in fact, whether the findings by the city council have some kind of evidentiary support. And I would ---- What allegations in your complaint raise that issue? I believe that would be page 23, Your Honor. Of the record? Of the record. And the facial takings claim. Is that page 23 at paragraph 55. Page 23. And also I believe that ---- Tell me the language specifically that you say raises the issue of whether or not the findings that the city predicated its ordinance on were not a fit for the government interest. Where is that language? Actually, I'm mistaken, Your Honor, because that talks specifically about the statutory entitlements. Paragraph, I believe, 58. That's the Equal Protection. No, 58, I believe. Page 24? That's correct. In paragraph 58, I thought that was talking about the Equal Protection Clause. And there was also a Fifth Amendment, Fourteenth Amendment claim there. But I'm looking for the specific language in the complaint that raises the issue that you're raising here before us regarding the rational basis and the government interest vis-à-vis the factual predicate. Oh, here it is, Your Honor. Page 16, paragraph 14, talking about there was not specific evidence reasonably relating. Page 16 of the excerpt of record. Excuse me, paragraph 14, there was not specific evidence reasonably relating plaintiffs' individual hotels and motels to the city's preferred legitimate governmental interest in adopting Ordinance Number 12137. So just to make sure I understand this, this would mean that the courts could no longer rely on preambles and stated interests and we would have to have a trial in every case. I'm just trying to understand the impact of this. I believe the Del Monte Dunes case also, Your Honor, talks about in context of a substantially advanced and legitimate governmental interest test that we were talking about factual assessments. And my contention is, is that if it's contained within the face of the ordinance and, in fact, the city is making those contentions, then, in fact, there has to be evidence either in the record or that would be supporting those factual allegations for purposes of determining whether, in fact, there's a taking. For an equal protection challenge, I agree, Your Honor, that one takes the allegations on its face value. But for purposes of a taking challenge, if the city is making that as the basis for the adoption of the ordinance, then there has to be some kind of a reasonable basis between the preferred legitimate governmental interest and the basis for adopting it. So, for example, they would need to say, we initiated five nuisance abatement proceedings,  I'm just asking, you know, because we have to kind of figure out, maybe not just for your case, but for other cases, how this would really work. Because I thought in part it was that some of these whereas clauses are pretty, you know, loosey-goosey. But this one says, you know, we had these five and then we had this and we had this particular problem and that didn't work and so now we're doing this. The flip side of that, Your Honor, is that if one takes it on just its face value, one is converting once again what I believe, as I understand it, the Supreme Court is saying one should not do in a takings challenge, which should not be mixing it as a category of an equal protection claim. That it's intensely factual in nature. I think we've cited the Evers-City of Escondido case, which in fact was, I believe, also a facial takings claim. And the East case specifically says that these are intensely factual in nature. So if one looks at it, once again, I agree, if one looks at it as an equal protection claim, one takes it at face value. But as a takings claim, I think as long as it's within the scope and dominant features of the face of the ordinance, one is entitled to go beyond that to look at whether the factual evidence supports those claims. Where do you link your factual allegations in paragraph 14? Where do you link that to one of your claims? I don't know if I've actually linked it in the claims, and I would indicate that our contention is we've made the claim the general claim of a facial taking, and under Rule 8a, notice pleading, that is sufficient for purposes of giving notice to the city of the claim. And certainly it came up within the context of the Rule 12b6 motion. So the district court was aware that that was the claim and should have at least contemplated leave to amend if, in fact, it required more specificity. I don't think it does under Rule 8a, but certainly it came up within the context of the record. Well, your paragraph 55 speaks about void for vagueness. 55 talks about constitutes of facial taking. We indicate it as facial taking of a property entitlement. Now, how many hotels and motels do you say are affected? Well, in terms of the ordinance in general or in terms of the due process notice? Well, the special, the one, the ordinance you say is 32, I believe, 32 motels, and those would be the 50 plaintiffs who are on the complaint. And five to 10 under the due process targeting notice? Right. We're not saying not everyone got notice. A substantial majority did get notice, but some of them didn't. All right. Thank you. Thank you. The case of Hotel and Motel v. Oakland is submitted. Thank you for waiting to the end of the calendar, and really thank both counsel for argument is very helpful.
judges: Noonan, McKeown, Rawlinson